**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Wayne CAMERON, Defendant-Appellant.**

**No. 73-1718.**

United States Court of Appeals, Ninth Circuit.

Sept. 20, 1973.

Jack McCall (argued), of Mason, Mc-Call & Ross, Phoenix, Ariz., for defendant-appellant.

Thomas N. Crowe, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and BYRNE,* District Judge.

WILLIAM M. BYRNE, District Judge:

Cameron was convicted by jury of passing and uttering a counterfeit twenty dollar federal reserve note with knowledge that it was counterfeit, a violation of 18 U.S.C. § 472.

Although Cameron was indicted for *only one incident* of passing a counterfeit bill, the government produced evidence pertaining to other similar incidents which occurred on the same date (September 24, 1971) and in the same city (Mesa, Arizona).

Roland Farabee, the person to whom Cameron passed the counterfeit bill, testified that, at 3:30 P.M., Cameron and a female passenger (later identified as Barbara Sue Cowgar) arrived in a 1959 Ford at the gas station where Farabee was employed. Cameron told Farabee that he was there to pick up a tire which he had previously left for repair. When Farabee went to get it, Cameron got out of the Ford, walked to the rear, and opened the trunk. When Farabee returned with the tire, Cameron was holding the counterfeit bill in his hand. After Farabee put the tire in the trunk, Cameron handed him the bill. Since the charge for the tire was only $2.00, Fara-

---

* Honorable William M. Byrne, Sr., United States Senior District Judge, Central District of California, sitting by designation.

bee took the bill to the cash box to get change. While doing so, he noticed that "it looked funny," but did not say anything until appellant left, to avoid "any trouble right then." He brought Cameron his change of $18.00. Farabee did not see what Cameron did with the change. Shortly after the Ford drove away, it was determined that the bill was indeed counterfeit. Consequently, the police were summoned. On cross-examination, Farabee described the quality of the counterfeit bill by saying that, "One side looked pretty good. The other side looked pretty bad."

Each of three other witnesses (Ronald Cripe, Norma Jean Sharp, and Lorey Egbert) testified that, in separate incidents *earlier* that day, Miss Cowgar passed counterfeit twenty dollar bills to them. Each of them also testified that, at the time she made those passes, she was alone and driving a certain 1963 Chevrolet. Each of the victims was suspicious that the bills were counterfeit and turned them over to the authorities.

Marilyn Mills testified that, in a separate incident *subsequent to* the pass to Farabee, Cameron accompanied Miss Cowgar when she passed a counterfeit twenty dollar bill to her for the purpose of obtaining change for the pop machine. Mrs. Mills testified that Cameron had one hand in his pocket "and I could hear rattling in his pocket, and to me it sounded like change in his pocket and I thought that it was funny that they would ask for change for the pop machine if he already had some."

Cameron testified that about 3:30 P. M., on September 24, Miss Cowgar had stopped by his residence. Since he was in the process of leaving to pick up his tire at Farabee's gas station, he took her with him. At the station, she gave him the twenty dollar bill in order to pay for the tire repair. He, in turn, handed it to Farabee. Then, he gave the $18.00 change back to Miss Cowgar. After leaving the gas station, the pair made four other stops and then returned to his residence. The first stop was at a self-service gas station where he put $2.-00 worth of low-priced gasoline into the Ford and Miss Cowgar paid for it with a twenty dollar bill. The second stop was at a souvenir shop where he waited in the car while Miss Cowgar went inside. He did not know whether she passed any money there. The third stop was at a general store where Miss Cowgar obtained change from the clerk (i. e., Mrs. Mills) in order to buy soda pop from a machine. He testified he did not see what she gave the clerk for the change. The fourth stop was at a fruit stand where Miss Cowgar purchased various kinds of fruit and he carried it to the car for her. He said he did not see what Miss Cowgar paid the saleslady with. After returning to Cameron's house, Miss Cowgar told him that she had been passing counterfeit money.

He further testified he had been present during a conversation occurring two or three weeks before the date of his arrest, when dealings in counterfeit money were discussed. He also testified that he did not know that the bill he gave to Farabee was counterfeit until later that afternoon when Miss Cowgar informed him of that fact. On cross-examination, he admitted that he had previously been convicted for selling heroin.

Cameron rested his case without producing any other evidence. A motion for a judgment of acquittal on the ground the evidence was insufficient to sustain a conviction was denied. Subsequently, the jury returned a guilty verdict and the court sentenced Cameron under the provisions of the Federal Youth Corrections Act.

Cameron asserts that the district court erred in denying his motion for a judgment of acquittal and contends that the evidence was insufficient for the jury to determine that he knew the bill was counterfeit at the time he passed it to Farabee.

■ When ruling on a motion for judgment of acquittal, the trial court must determine whether or not the evidence is sufficient for the jurors to reasonably arrive at the conclusion that the

defendant is guilty. United States v. Nelson, 419 F.2d 1237, 1241–1243 (C.A. 9, 1969).

The district court answered this question in the affirmative by denying Cameron's motion for a judgment of acquittal. By so ruling, it implicitly found that the evidence was sufficient to enable the jurors to reasonably conclude that Cameron had the requisite guilty knowledge. We agree that the evidence was sufficient to support both the district court's ruling and the jury's verdict.

Affirmed.